UNITED STATES DISTRCT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **HERITAGE MINISTRIES d/b/a HOMESTEAD HERITAGE,** § § § | |
| *Plaintiff*, § § | |
| v. § § | **CASE NO.: 6:25-CV-00364-LS** |
| **INDEPENDENT DIGITAL NEWS & MEDIA, LTD.,** § § § § | |
| *Defendant*. § | |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Heritage Ministries d/b/a Homestead Heritage ("Heritage" or "Plaintiff") files its First Amended Complaint against Defendant Independent Digital News & Media, Ltd. ("Defendant" or the "Independent"). In support thereof, Plaintiff respectfully shows the Court the following:

**I.
SUMMARY**

The Independent defamed Heritage through an article published worldwide and written by Michelle Del Rey entitled "*Living in a 'cult' was all she knew – until a traumatic birth pushed her to escape*" (the "Article"). The Article contains false and defamatory statements that have caused and are likely to cause significant harm to the reputation and standing of Heritage. According to Del Rey's statements, she spent over a year interviewing six former members of Heritage but interviewed no current members. The Article falsely accuses Heritage of the crime of practicing midwifery without a license; prohibiting the use of pain medication; and engaging in practices that make birthing complications more likely and dangerous. Despite refutation by Heritage prior to

publication, the Independent falsely characterized the community of having an "expectation to marry and reproduce" and one in which women are "oppressed."

With regard to the subject of the Article, Tabitha Haugh, the Independent falsely claims that (1) Tabitha lost her home due to her decision to leave Heritage, which she sold on her own voluntary offer; and (2) Tabitha was fired for leaving the church, which she initiated by her own two weeks' notice and was offered paid time off for the remaining two weeks. The Article further claims that home education through Heritage includes "no history, math, science, nothing"—a boldly false statement.

The Independent, which has publications in every State in America and more than 4.8 million followers on Instagram and X (formerly Twitter), has generated more than 12.5 million views of the Article. Pursuant to a market exposure report conducted one month after the publication of the Article, the advertising costs to repair the damage the Article caused to Heritage exceeds $4,600,000, which reflects the detriment to Heritage's reputation caused by the rampant and widespread dissemination of the Article for which Heritage seeks to recover. Moreover, Heritage requests that the Court disgorge the Independent of the unjust profits it received and continues to receive from the Article, which on information and belief, exceed $75,000.

## II.
## PARTIES

    A.    **Plaintiff**

    1.    Plaintiff Heritage Ministries is a domestic nonprofit corporation that maintains its principal place of business in Texas at 49 Halbert Lane, Waco, Texas 76705.

    B.    **Defendant**

    2.    Defendant Independent Digital News & Media, Ltd. is a British private limited company doing business internationally and its registered office address is Alphabeta Building,

14-18 Finsbury Square, London, England, EC2A 1AH. Defendant has been served, and its counsel of record is Cameron Stracher, Cameron Stracher, PLLC, 1133 Broadway, Suite 516, New York, New York 10010.

## III.
## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's claim in this action pursuant to 28 U.S.C. §1332(a)(2) because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the Parties as Plaintiff is a nonprofit organization organized under the laws of the State of Texas, and Defendant is a foreign, private company that is a citizen of the United Kingdom.

4.      This Court has personal jurisdiction over the Defendant. This Court can exercise personal jurisdiction over a non-resident defendant when the non-resident defendant has purposefully availed itself to the forum state or has committed a tort in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Here, Defendant markets and advertises its products in Texas, committed a tort in Texas by publishing false and defamatory information concerning Plaintiff, and the effects of that tort were experienced primarily in Texas by Plaintiff, a Texas citizen. Accordingly, this Court has personal jurisdiction over the Independent and the exercise of personal jurisdiction over Defendant is consistent with the Constitution and laws of the United States.

## IV.
## STATEMENT OF FACTS

5.      In September 2024, for the first time, the Independent reached out by email to Heritage for comment on a story that it had been working on for close to a year. The Independent interviewed six former members of Heritage for the story. A representative of Heritage asked the

author of the article, Michelle Del Rey, to meet with them over the Labor Day holiday weekend, on a Saturday. She declined. Ms. Del Rey received multiple answers to her inquiries from Heritage, none of which were included or incorporated into her story. On September 19, 2024, the Independent ran an Article about former members of Heritage claiming they had escaped a "cult." The article by Michelle Del Rey, entitled "*Living in a 'cult' was all she knew – until a traumatic birth pushed her to escape,*" (the "Article"), contained a series of false and salacious claims about Heritage:[1]

    a)    That Heritage's community midwife "is unlicensed, practicing medicine illegally and left [a woman] with long term debilitating birth injuries."

    b)    "At Homestead Heritage, women are expected to get married and reproduce."

    c)    A woman during labor "did not receive pain medication, nor did she ask for it, because it went against church policy" and she was left with "permanent injuries to her pelvic floor."

    d)    "Church leaders hadn't allowed [Tabitha] to get married[.]"

    e)    That home education under Heritage includes "no history, math, science, nothing;"

    f)    That life at Heritage is "sinister, with a lack of education, adequate medical care and life options leaving them traumatized."

(the "Statements").[2]

    6.    In addition to the Statements, the general tenor of the Article is disparaging and directly and indirectly disparages Heritage, its members, and operations by claiming Heritage

---

[1] Exhibit A, Michelle Del Rey, *Living in a 'cult' was all she knew—until a traumatic birth pupshed her to escape*, The Independent, https://www.the-independent.com/news/world/americas/homestead-heritage-religion-escape-b2608204.html (last visited Oct. 23, 2025).

[2] The entire text of the Article is incorporated herein by this reference.

manipulates and abuses women, prohibits education, and violates the law. Although certain portions of the Article are framed as an opinion, that is far from the truth. The Article implies false and defamatory facts that are verifiably false—and that *were* verified by Heritage to be false prior to the Article's publication. Moreover, the Article's reference to criminal and civil penalties further conveys to the reader that Heritage is engaged in unlawful activity.

7. The Statements are demonstrably false and were intended to harm Heritage through their publication. Heritage invited the Independent in writing to strongly urge the publication to seek out other voices within its community about its practices and to visit the community to speak with them personally about their experiences. The Independent had no interest in any such visit.

8. On September 25, 2024, Heritage wrote a lengthy response identifying a variety of false statements and claims made in the Article. The rebuttal requested retraction of the defamatory statements. In truth, Heritage has no policy whatsoever on the use of pain medication—a fact disclosed to Ms. Del Rey before the Article was published. Heritage has performed hundreds of successful and healthy births through its midwives, none of which acts of service were for compensation requiring licensure. Heritage's women (described as oppressed or less-than by the Independent) are OB/GYNs, published authors, CPAs, business owners, nurses, dieticians, EMTs, paramedics, educators, actresses, ballet dancers, artists, medical sales reps, and professional counselors. One female member holds a Ph.D. in philosophy and is among the most cited researchers in the world.

9. Regarding the Independent's false statements about Tabitha Haugh—Heritage informed the Independent that Tabitha Haugh did not lose her home; she sold it to another member for $100,000. Tabitha Haugh was not fired; she quit and was given the option of taking Paid Time Off ("PTO") for her last two weeks. Similarly, the Independent's statements about Heritage's

education curriculum can be proven demonstrably false as Heritage's high school graduation and curriculum center identifies the courses and requirements Heritage has of its students, which specifically include math and sciences.

10. On October 1, 2024, the Independent wrote back through counsel, raising numerous defenses to Heritage's defamation claims. Primarily, the Independent contends, the statements in the article were not "of and concerning" Heritage such that its reputation could be injured. The Independent further claims that its statements were privileged under Texas law as "fair, true, and impartial" accounts of judicial proceedings—to wit, a complaint filed with TDLR by Noa Haugh related to unlicensed midwifery claims. Defendant claims that Heritage is a public figure for purposes of defamation law analysis, requiring Heritage to prove that the Independent acted with actual knowledge of the falsity of its claims in the Article or with reckless disregard for its truth.

11. The Independent purposefully published the Article knowing that it contained false and defamatory statements about Heritage. The Independent's callous actions are much more than a reporter following a lead; it was a calculated attack to financially and reputationally dismantle a faith-based community organization—and thus far, it has worked.

12. Heritage has experienced significant economic and reputational damages as a result of the Article. For instance, the Article resulted in threats of online violence, including calls to "[b]urn every last one to the ground." There have also been targeted and aggressive boycott campaigns against members' businesses and Heritage itself has been made the subject of a slanderous article referring to a small faith community as a "cult." Heritage's reputational damages are established by, among other things, the market report showing that the advertising value Heritage must expend to combat the visibility drawn by the Article exceeds $4,600,000. Additionally, Defendant has unjustly benefitted from its dissemination of the Article and such

financial benefits exceed $75,000. Heritage's community will not be the same, and as a result, Heritage brings these claims for defamation and seeks recovery of all damages recoverable by law.

## V.
## CAUSES OF ACTION

### COUNT ONE: DEFAMATION

13. Plaintiff hereby alleges and incorporates by reference each allegation made in the foregoing paragraphs as if each were separately set forth herein.

14. Defendant, an electronic media defendant, published the Article containing the Statements which are statements of fact in writing.

15. The Statements referred to the Plaintiff, a private figure plaintiff.

16. The Statements are false.

17. The Statements are defamatory, and the Statement that Heritage is engaged in criminal, unlicensed practice of medicine is defamatory per se.

18. The Statements are reasonably capable of a defamatory meaning, in that the Statements accus Heritage of committing crimes, subjecting women to unsafe medical practices and physical, emotional, and sexual abuse, and failing to provide and/or require children to receive necessary educational services.

19. The Statements explicitly refer to Heritage, and to the extent a Statement does not, the Statement is still defamatory as each Statement implies a substantially false and misleading impression concerning Heritage.

20. With regard to the truth of the Statements, Defendant was:

    a. Acting with malice;

    b. Negligent; or

    c. Liable without regard to fault.

21. Defendant's negligence and/or malice is established by, in part, Defendant's decision to publish the Article despite Heritage informing Defendant that the Statements were false prior to Defendant publishing the Article.

22. Plaintiff has suffered substantial economic and reputational damages as a result of Defendant publishing the defamatory Statements, refusal to publish Heritage's rebuttal to the Article, and continued efforts to impugn the integrity of Heritage, its members, and its community. Upon information and belief, the advertising value equivalent of the visibility drawn the Article exceeds $4,600,000, and Heritage's damages continue to as the Article remains in circulation.

23. Moreover, Plaintiff is entitled to recover exemplary damages based upon Defendant's actual malice, with Plaintiff having complied with the Defamation Mitigation Act under Chapter 73 of the Texas Civil Practice and Remedies Code by virtue of Defendant's failure to retract or clarify its statements.

## COUNT TWO: UNJUST ENRICHMENT

24. Plaintiff hereby alleges and incorporates by reference each allegation made in the foregoing paragraphs as if each were separately set forth herein.

25. Defendant has benefited through its wrongful conduct in publishing the defamatory Article. Defendant's benefits include, but are not limited to, increased engagement on its website, social media accounts, and news media exposure, such as MSN News, AOL News, Yahoo News, and NewsBreak.

26. As a result of publishing the Article, Defendant is financially benefitting and commercially capitalizing on the increased exposure to its business to the detriment of Plaintiff, which has resulted in Defendant receiving substantial monetary benefits arising from the publication of the Article.

27.     On information and belief, the advertising value equivalent of the visibility drawn by the Article and publications containing Defendant's defamatory Statements exceeds $4,600,000.

28.     Defendant's benefit was gained at Plaintiff's expense, was wrongful, and would be unjust for Defendant to maintain. Accordingly, Plaintiff seeks the disgorgement of the financial benefits, including earned profits, Defendant has received in connection with the publication and dissemination of the Article, which upon information and belief, exceeds $75,000.

## VI.
## PRAYER FOR RELIEF

29.     Plaintiff therefore requests that Defendant be cited to appear and answer, and that upon final hearing, Plaintiff be awarded the following:

   a. Economic damages, including but not limited to Plaintiff's presumed, special, general, and reputational damages;

   b. Exemplary damages;

   c. Court costs; and

   d. All other relief to which Plaintiff is otherwise entitled.

        Respectfully submitted,

        **SCHEEF & STONE, L.L.P.**

By: */s/ J. Mitchell Little*
      J. Mitchell Little
      State Bar No. 24043788
      mitch.little@solidcounsel.com
      2600 Network Blvd., Suite 400
      Frisco, Texas 75034
      (214) 472-2100 Telephone
      (214) 472-2150 Telecopier

      ATTORNEYS FOR PLAINTIFF